UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────

LUVINA M. MARTINBEAULT, on behalf of
R.J.M.,

                        Plaintiff,

            V.

MICHAEL J. ASTRUE

               Defendant.

────────────────────────────────────

**REPORT AND
RECOMMENDATION**

07-CV-1297
(DNH/VEB)

## I. INTRODUCTION

In May of 2005, Plaintiff Luvina Martinbeault filed an application for Supplemental

Security Income ("SSI") benefits under the Social Security Act on behalf of her son, R.J.M.

("Claimant").[1]   The application was denied by the Commissioner of Social Security in

October of 2005.

Plaintiff, through her attorney, Peter L. Walton, Esq., commenced this action on

December 13, 2007, by filing a Complaint in the United States District Court for the

Northern District of New York. (Docket No. 1).   Plaintiff seeks judicial review of the

Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 16, 2009, the Honorable Norman A. Mordue, Chief United States

District Judge, referred this case to the undersigned for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

────────────────────

[1]Claimant is a minor.  Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil
Procedure, he will be referred to as "Claimant" or by his initials in this Report and Recommendation.

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff is the legal guardian of Claimant, a minor child.  On May 5, 2005, Plaintiff filed an application for SSI benefits on Claimant's behalf. (T at 11).[2]  The application was denied on October 19, 2005, and upon reconsideration on February 21, 2006. (T at 11, 22, 23).  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on April 17, 2006. (T at 11).  Plaintiff waived Claimant's right to appear and testify at the hearing.  (T at 29).

On September 20, 2006, ALJ Elizabeth Koennecke issued a written decision denying the application for SSI benefits.  (T at 11-21).  ALJ Koennecke's decision became the Commissioner's final decision on October 24, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 8-10).

Plaintiff, acting on Claimant's behalf, commenced this action on December 13, 2007. (Docket No. 1).  The Commissioner interposed an Answer on March 18, 2008. (Docket No. 8).  Plaintiff filed a supporting Brief on March 18, 2008. (Docket No. 9).  The Commissioner filed a Brief in opposition on June 24, 2008. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that this case be remanded to the Commissioner for further proceedings.

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7)

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); Kittles, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42

U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); Ramos, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a);

Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ noted that Claimant was born on July 18, 2000, and thus was a "preschooler" (age 4) pursuant to 20 CFR § 416.926a(g)(2) on May 5, 2005, the date the application for benefits was filed. (T at 14).  The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision.  (T at 14).  She further determined that Claimant suffers from the following severe impairments pursuant to 20 CFR § 416.924 (c): attention deficit hyperactivity disorder ("ADHD"), borderline intellectual functioning, and an adjustment disorder.  (T at 14).

However, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 14-15).

In addition, the ALJ concluded that Claimant did not have an impairment or combination of impairments that *functionally* equals the Listings. (T at 15). As to the six domains of function: the ALJ determined that Claimant had: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating to others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for himself; and (6) less than marked limitation with regard to health and physical well-being. (T at 15-21).

In light of the foregoing, the ALJ found that Claimant had not been disabled, as defined under the Act, since the date the application was filed. As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 8-10)

## 2.    Plaintiff's Arguments

Plaintiff offers two (2) principal arguments in support of her contention that the Commissioner's decision should be reversed. First, she argues that the ALJ erred by concluding that Claimant's impairments did not meet or medically equal §112.05 of the Listings. Second, Plaintiff contends that the ALJ improperly found that Claimant's impairments did not functionally equal §112.05 of the Listings.

7

### a.    §112.05 of the Listings

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

To meet or medically equal the impairment set forth in § 112.05 (the Listing for Mental Retardation), the claimant's impairments must be "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning."  Further, in addition to satisfying this diagnostic description, the claimant must show that he or she meets one of the six subparts of the Listing (112.05(A) - 112.05(F)).

In this case, Plaintiff argues that Claimant's impairments meet the requirements set forth in subpart D of §112.05.  Subpart (D) requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function."

In support of her argument, Plaintiff points to IQ testing performed by Jerry Miller, M.A., in which he determined that Claimant had a verbal IQ of 74 (4th percentile), performance IQ of 70 (2nd percentile), processing speed of 83 (13th percentile), and full scale IQ of 70 (2nd percentile). (T at 177).  Plaintiff asserts that these testing results, along with Plaintiff's diagnosed ADHD and adjustment disorder, satisfy §112.05 (D) of the Listings.

8

In response, the Commissioner contends that the IQ scores obtained by Miller were not valid and thus cannot satisfy §112.05 (D) of the Listings.  While the Commissioner notes that Miller indicated Claimant's alertness was variable, that he had difficultly staying on task, and that his test-taking skills showed comprehension problems, the Commissioner argues that the record evidence as a whole does not indicate a diagnosis of mental retardation, which suggests that the IQ test scores may not accurately reflect Claimant's actual intellectual abilities. (T at 177, 179).

This Court finds the Commissioner's argument unavailing in several respects.  First, the ALJ did not make any finding with respect to the validity of Claimant's IQ scores.  The scores are mentioned twice in the ALJ's decision, without any indication that the ALJ considered them invalid for the reasons articulated by the Commissioner. The Commissioner's attempt to rely on Miller's comments in support of its argument that the scores were invalid has no basis in the ALJ's decision and constitutes a post-hoc rationalization for the ALJ's ultimate conclusion.

(T at 14, 16).  This Court may not re-weigh the evidence and may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir.2005); see also Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)); see also Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999) ("Nor may [the Court] properly affirm an administrative action on grounds different from those considered by the agency") (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

In this case, it would appear that the requirements of §112.05(D) of the Listings are

9

satisfied by the Miller IQ scores (specifically, the performance IQ score of 70 and the full scale IQ of 70), combined with the ALJ's findings that Plaintiff's ADHD and adjustment disorder are severe impairments.[4]  Although the balance of the ALJ's decision arguably suggests that she *might* not have considered the IQ scores as an accurate reflection of Claimant's intellectual capabilities, no such explicit finding was made by the ALJ and this Court is not permitted to accept the Commissioner's post-hoc rationalization in this regard.

Second, the explanation actually provided by the ALJ with regard to §112.05 is insufficient.  The ALJ's discussion of whether Claimant has an impairment or combination of impairments that meets or medically equals §112.05 of the Listings is set forth in a single sentence in which he stated: "Specifically, Section 112.05, 112.11, and 112.04 of the Listings have been considered but are not met or medically equaled." (T at 15).

This explanation is plainly insufficient.  See Brown ex rel. S.W. v. Astrue, No. 1:05-CV-0985, 2008 WL 3200246, at *10 (N.D.N.Y. Aug. 5, 2008) ("Where the claimant's symptoms as described in the medical evidence appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings.") (quoting Giles v. Chater, No. 95-CV-0010E, 1996 WL 116188, at *5 (W.D.N.Y.Jan.8, 1996)).

A court "cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded

---

[4]As noted above, §112.05 (D) has two components: (1) a valid IQ score falling within the specified range and (2) a physical or other mental impairment imposing an additional and significant limitation of function.  Because the ALJ concluded that Claimant's ADHD and adjustment disorder were "severe" impairments (T at 14), the second prong of §112.05 (D) has been satisfied. See Santiago v. Astrue, No. No. 07-CV-6239CJS, 2008 WL 2405728, at *5 (June 11, 2008); see also Brown v. Comm'r of Soc. Sec., 311 F.Supp.2d 1151 (D.Kan.2004): Matthews ex rel Dixon v. Barnhart, 339 F.Supp.2d 1286, 1293 (N.D.Ala.2004).

the evidence considered." Morgan on Behalf of Morgan v. Chater, 913 F.Supp.184,

188-189 (W.D.N.Y.1996) (quoting Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir.1985)).

     This Court recognizes that the federal circuit courts have generally held that an ALJ

may reject an IQ score as invalid when it is inconsistent with the record.[5]  However, with

respect to this particular case, in the absence of an actual finding by the ALJ that the Miller

IQ scores were invalid, coupled with an explanation in support of that finding, this Court

cannot evaluate whether the ALJ applied the appropriate legal standard.

     Accordingly, this Court recommends a remand.  See Swanson v. Astrue, No.

5:06-CV-97, 2009 WL 1362959, at *3 (N.D.N.Y. May 13, 2009)(remanding because "the

ALJ did not provide the necessary reasons for her decision that Plaintiff did not meet Listing

112.05 based on the introductory diagnostic requirements").

     On remand, the ALJ should consider whether the Miller IQ test scores, combined

with the Claimant's ADHD and adjustment disorder (which were already found to be

severe), meet or medically equal §112.05 (D) of the Listings.  A detailed statement of

---

[5]Lax v. Astrue, 489 F.3d 1080, 1087 (10th Cir.2007) (citing Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir.2003); Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir.1998); Muse v. Sullivan, 925 F.2d 785, 790 (5th Cir.1991); Lowery v. Sullivan, 979 F.2d 835, 837-39 (11th Cir.1992)) ("We conclude that it was proper for the ALJ to consider other evidence in the record when determining whether Lax's IQ scores were valid and that the record contains substantial evidence to support a finding that Lax's IQ scores were not an accurate reflection of his intellectual capabilities."); see also Clay v. Barnhart, 417 F.3d 922, 929-31 (8th Cir.2005) (upholding the ALJ's rejection of two sets of IQ scores where the test administrator considered the first set invalid and the report on the second set was sufficiently equivocal as to its validity to allow the ALJ to disregard its conclusions); Brown v. Sec'y of Health & Human Servs., 948 F.2d 268 (6th Cir.1991) (holding that the district court's conclusion that Plaintiff's IQ score was invalid was unsupported by substantial evidence, but not questioning the fact-finder's role in determining the validity of IQ scores); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir.1986) (finding the ALJ's rejection of the Plaintiff's low IQ scores proper where the Plaintiff was close to completing a bachelor's degree and had taught high school algebra); Vazquez ex rel. Jorge v. Barnhart, 2005 WL 2429488, at *8 (S.D.N.Y. Sept. 30, 2005) ("As Jorge has multiple IQ scores both below and above 70, it is for the ALJ to reconcile these scores."); Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y.1999) (stating that "an ALJ is not required to accept a claimant's IQ scores when they are inconsistent with the record" but finding the Plaintiff's scores were not inconsistent with the record) (quoting Popp, 779 F.2d at 1499-1500).

reasons should be provided in support of the ultimate determination.

### b.    Functional Equivalence

As noted above, even if the Claimant's impairments do not meet or medically equal one of the impairments set forth in the Listings, the Commissioner must still determine whether the impairment or combination of impairments are functionally equivalent to a Listing.  Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1).

In summary, the ALJ made the following findings as to each of the domains.

### i.    Acquiring and Using Information

This domain considers the child's ability to acquire or learn information and how well the child uses the information he has learned.  For a pre-school child (age 3 to attainment of age 6), the ability to acquire and use information should manifest itself in the following abilities: listening to stories, rhyming words, matching letters, counting, sorting shapes, and building with blocks, painting, coloring, copying shapes, using scissors, using words to ask questions, giving answers, following directions, describing things, explaining oneself, and telling stories.  20 C.F.R. § 416.926a 20 C.F.R. § 416.926a(g)(2)(iii).

The ALJ recognized Claimant's "low borderline IQ" as evidenced by the Miller IQ scores. (T at 16).  Further, the ALJ noted that Claimant's teacher indicated that Claimant had a "very serious problem" with respect to understanding and participating in class discussion, expressing ideas, in written form, and applying problem-solving skills in class discussions. (T at 82).  The teacher further noted "serious" problems providing oral explanations and recalling and applying previously learned material. (T at 82).

Notwithstanding these findings, the ALJ concluded that Claimant had a "less than marked" limitation in this domain.  The ALJ based her determination on the findings of the State Agency review consultants, who reviewed the medical evidence and found that Claimant had less than a marked limitation.  (T at 202, 217).  The ALJ also noted that Claimant's teacher reported that Claimant had no problem or only a slight problem comprehending oral instructions, understanding vocabulary, and using information.

The fundamental problem with the ALJ's analysis in this regard is that it does not consider an adequate universe of information.  To the extent that the ALJ's determination is based upon a report prepared by Claimant's teacher, the report, which documents serious and very serious problems in several relevant areas, does not necessarily support the ALJ's ultimate conclusion.  In other words, the ALJ was inappropriately selective in his use of the report from Claimant's teacher.  More importantly, the ALJ was obligated to consider Claimant's abilities outside of the structured school setting.

The "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." Smith v. Massanari, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002) (citing 20 C.F.R. § 416.924c (a),(d)).

In other words, the ALJ was obligated to consider Claimant's level of functioning outside of his structured educational environment.  See id,; see also Straw v. Apfel, No. 98 Civ. 5089, 2001 WL 406184, at *6 (S.D.N.Y. Apr. 20, 2001).  Upon consideration of the effects of the educational environment, it is quite possible to probable that Claimant could

not exhibit even the limited abilities noted by Claimant's teacher outside of the educational structure.  The ALJ's reliance on the State Agency review consultants is, without more, insufficient to provide substantial evidence in support of the decision.  See Vargas v. Sullivan, 898 F.2d 293, 295 (2d Cir. 1990).  On remand, the ALJ should give greater consideration to the information provided by Claimant's mother regarding his abilities as to this domain (T at 58) and, if necessary, obtain testimony from other individuals or treating professionals who might offer testimony or opinion concerning Claimant's abilities outside of a structured setting.

### ii.    Attending and Completing Tasks

In this domain, the Commissioner considers the child's ability "to focus and maintain . . . attention," and how well he can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).

A preschooler is expected to pay attention when spoken to directly, sustain attention to play and learning activities, and concentrate on activities like putting puzzles together or completing art projects, focus long enough to do many more things independently, such as getting clothes together and dressing, feeding, or putting away toys. A preschooler should usually be able to wait his or her turn and to change activity when a caregiver or teacher says it is time to do something else.20 C.F.R. §416.926a (h)(2)(iii).

The ALJ found that Claimant's limitations in this domain were less than marked. This conclusion was based upon reports from the director of Claimant's day care center and teacher, as well as the assessments provided by the State Agency review consultants. (T at 17).  However, this Court finds that the ALJ gave insufficient consideration to the

14

information provided by Claimant's mother (T at 60) and treating/examining professionals (T at 176, 178, 240), all of which indicated significant levels of hyperactivity and an inability to attend to and complete tasks outside of the school setting.  On remand, the ALJ should consider the extent to which the limited abilities noted by the day care center director and Claimant's teachers were a result of structured settings.

### iii.       Interacting and Relating

In this domain, the Commissioner considers the child's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

With regard to this domain, a preschool age child is expected to socialize with children as well as adults, begin to prefer playmates his or her own age and start to develop friendships with children who are his or her age, use words instead of actions to express thoughts and feeling, be able to share, show affection, and offer to help.  The child should be able to relate to caregivers with increasing independence, choose friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision. The preschooler is expected to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what he or she is saying most of the time. 20 C.F.R. § 416.926a(i)(2)(iii).

The ALJ determined that Claimant's limitations as to this domain were "less than marked." (T at 18).  This determination was based upon the State Agency consultants' assessments, reports from Claimant's day care center that he played well with children, and

an indication from Claimant's teacher that he had no problems with skills related to this domain, including playing cooperatively with other children, making and keeping friends, and following rules. (T at 18, 84).

As above, insufficient consideration was given to the opinions and observations of Claimant's mother and treating/examining professionals concerning his abilities and behavior outside of the structured setting, which indicated substantial displays of aggression and other defiant behavior. (T at 59, 176, 178, 240-41, 243).

It is with regard to this domain that the ALJ's failure to develop the record can perhaps best be seen.  The question is whether and to what extent Claimant is limited in his ability to interact with and relate to others.  Claimant lives with several other people, including his parents.  The information they provided indicates the existence of marked limitations. (T at 59). Before discounting that information based upon Claimant's behavior at day care and in school, the ALJ was obligated to further develop the record regarding Claimant's functioning outside of the structured setting.

### iv.    Moving about and Manipulating Objects

In this domain, the Commissioner must consider the child's ability to "move [his or her] body from one place to another and how [they] move and manipulate things." 20 C.F.R. § 416.926a(j).  A preschooler is expected to walk and run with ease, climb stairs and playground equipment with little supervision, complete puzzles easily, string beads, and build with an assortment of blocks. The child should be showing increasing control of crayons, markers, and small pieces in board games, and should be able to cut with scissors independently and manipulate buttons and other fasteners.  20 C.F.R. §416.926a(j)(2)(iii).

The ALJ found no limitation in this domain, again relying on the State Agency

consultants and the report from Claimant's teacher.  (T at 19).  However, Claimant's mother indicated that he cannot catch a large ball, print at least some letters, copy his first name, or use scissors well. (T at 59).  Miller noted that Claimant could not run smoothly, jump well, or hop on one foot.  (T at 178).  The ALJ failed to give due consideration to evidence of Claimant's functioning in this domain outside of the education environment.  The evidence, along with such other evidence as may be obtained concerning Claimant's abilities in this regard, should be given greater consideration on remand.

### v.    Caring for Self

In this domain, the Commissioner considers the child's ability to "maintain a healthy emotional and physical state, including how well [he or she] gets physical and emotional wants and needs met in appropriate ways; copes with stress and changes in environment; and whether the child can take care of his or her own health, possessions, and living area. 20 C.F.R. § 416.926a(k).  Preschool children are expected to take care of many physical needs independently (e.g., putting on shoes, getting a snack), and should also want to try doing some things that they cannot do fully (e.g., tying  shoes, climbing on a chair to reach something up high, taking a bath). The child should also begin to understand how to control behaviors that are harmful (e.g., crossing the street without an adult).  20 C.F.R. § 416.926a(k)(2)(iii).

Although the record indicated some limitations as to this domain, including at one time, an indication that Claimant needed assistance in bathing, dressing and feeding himself (T at 178), Claimant's mother indicated that he was able to eat using a fork and spoon by himself, dress himself without help (except for tying shoes), wash and bathe without help, and brush his teeth without help. (T at 60).  In light of the foregoing, which

included consideration by the ALJ of evidence concerning Claimant's abilities outside of a structured setting, this Court finds that substantial evidence supports the ALJ's assessment that Claimant has less than marked limitations as to this domain.

### vi.    Health and Physical Well-Being

In this domain, the Commissioner considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the claimant's] functioning."  416.926a(*l*).  The ALJ concluded that Claimant had less than marked limitations in this regard.  (T at 21).  Plaintiff points to Claimant's treatment for asthma and respiratory illnesses (T at 132-36, 207-208), gastroesophageal reflux disease (T at 230), sleep difficulties (T at 240-41, 243), and various other physical ailments (T at 140-75, 180-99).  On remand, the ALJ should develop the record as stated above with regard to Claimant's level of functioning in the first four domains and then re-evaluate the cumulative physical effects of Claimant's physical or mental impairments and their associated treatments or therapies on his overall level of functioning.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation. Specifically, the ALJ should consider whether Claimant's IQ scores, when considered with his ADHD and adjustment disorder meet or medically equal §112.05 (D) of the Listings. If the ALJ concludes that Listing § 112.05 (D) has not been met or medically equaled, a detailed explanation for the reasons underlying that determination should be provided. Further, if a functional equivalence finding is necessary, the ALJ should give more explicit and careful consideration to evidence concerning Claimant's level of functioning in each of the first four domains outside of the educational environment, including (in particular) at home. Further development of the evidentiary record may be required in that regard.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   October 27, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir.

1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

October 27, 2009

Victor E. Bianchini
United States Magistrate Judge